IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TEXTRON AVIATION, INC.,

    Plaintiff,

v.                                                               Case No. 18-1187-JWB

SUPERIOR AIR CHARTER, LLC,

    Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant Superior Air Charter's ("SAC") motion to dismiss and compel arbitration. (Doc. 15.) The matter has been fully briefed and is ripe for decision. (Docs. 16, 17, 18.) For the reasons stated herein, SAC's motion is DENIED.

**I.    Background**

On June 26, 2018, Plaintiff Textron Aviation, Inc., ("Textron") filed this action against SAC. Textron alleges that it is a successor in interest to Cessna after a merger. Cessna and SAC entered into eight ProAdvantage agreements concerning eight different aircraft from 2012 to 2014. The ProAdvantage agreements provided price protection for maintenance costs and the ability to purchase parts directly. Pursuant to the terms, upon early termination, SAC must essentially pay any negative balance. The ProAdvantage agreements were allegedly terminated early. Textron seeks the amounts owed due to the early termination. In SAC's motion to dismiss, SAC asserts that the parties also entered into Right of Assignment agreements ("assignment agreements") at a later date regarding each ProAdvantage agreement. These assignment agreements gave the "Right Holder," Cessna Finance Corporation, the right to request assignment of the ProAdvantage

agreement under certain circumstances.[1]  The complaint does not refer to the assignment agreements or any term therein.

Textron also seeks the amounts owed on an open account which was utilized for maintenance, inspection services, parts, and/or supplies.  Textron also brings a claim for breach of a consignment agreement.  The consignment agreement has not been attached as an exhibit to the complaint or to SAC's motion to dismiss.  The complaint alleges that SAC removed parts from the consignment inventory without notifying Textron in breach of the consignment agreement.  Finally, Textron has alleged a claim for conversion on the basis that SAC failed to follow procedures in the consignment agreement and has therefore converted Textron's property.

Textron seeks monetary damages, return of the consignment parts, attorney fees and interest.  SAC has moved to dismiss and compel arbitration on the basis that the arbitration clause in the assignment agreements or the arbitration clause in the ProAdvantage agreements mandates that this matter be arbitrated.  Textron asserts that this type of action, to collect amounts owed, is excluded from the arbitration provision in the ProAdvantage agreements and that this dispute does not arise out of the assignment agreements.

<u>Relevant Arbitration Provisions.</u>

SAC included an "exemplar" for both the ProAdvantage agreements and the assignment agreements as exhibits to its memorandum.  (Doc. 16, Exhs. A, B.)  SAC represents that the exemplars are representative of both agreements in that all ProAdvantage agreements have the same arbitration provision and all the assignment agreements have the same arbitration provision.

---

[1] The assignment agreements also reference a "Secondary Agreement" concerning the financing of the aircraft that was entered into by the Right Holder and SAC. (Doc. 16, Exh. B.)  The parties do not address this agreement in their briefing.

Textron does not appear to dispute this assertion. The arbitration provision in the assignment agreements is as follows:

> 14.0 Dispute Resolution. The parties shall strive to settle amicably, in good faith, and with due diligence any dispute arising from or relating to this Right of Assignment. The Parties agree if such attempts to resolve a dispute are unsuccessful, then any Party may avail itself of this Right of Assignment's stipulation for arbitration as the only binding formal proceeding or action allowed for dispute resolution. Binding arbitration conducted before a panel of three independent arbitrators in accordance with the rules of the American Arbitration Association is the only authorized formal proceeding or action for dispute resolution (with the exception of third-party claims in litigation). The venue for any proceeding or action arising from or relating to the Right of Assignment is Wichita, Kansas U.S.A. Arbitration shall be conducted in the English Language.

(Doc. 16, Exh. B at 6.)

The arbitration provision in the ProAdvantage agreements is as follows:

> 11.7 Dispute Resolution. The Parties shall strive to settle amicably, in good faith, and with due diligence any dispute arising from or relating to this Agreement. The Parties agree if such attempts to resolve a dispute are unsuccessful, then any Party may avail itself of formal proceeding or action allowed for dispute resolution except as otherwise expressly stated in this Agreement. All controversies and claims arising from or relating to this Agreement with the exception of third-party claims in litigation and Cessna-initiated collection agency actions or civil litigation for amounts owed by Customer are to be resolved by binding arbitration in accordance with all applicable rules of the American Arbitration Association.
>
> The arbitration or, as applicable, civil litigation will be held in Wichita, Kansas. The arbitration will be conducted in English. Any award, order, or judgment pursuant to the arbitration is final and may be entered and enforced in any court of competent jurisdiction. Except as otherwise agreed to herein, each Party shall bear its own arbitration costs and expenses and an equal share of the arbitration fees. No arbitrator or panel has the right or authority to award punitive damages against any Party to this Agreement. No arbitrator or panel has the right or authority to make any ruling, finding, or award that does not conform to the provisions of this Agreement and any such purported ruling, finding, or award is void. Except as required by law or to enforce an arbitration award, order, or judgment, no Party, arbitrator, or panel may disclose the existence, content, or result of any arbitration hereunder without the prior written consent of the Parties. Each Party's rights and obligations in this section survive the suspension, termination, cancellation, revocation, and/or expiration of this Agreement.

(Doc. 16, Exh. A at 22.)

## II. Analysis

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., requires that "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable...." 9 U.S.C. § 2. There is a strong policy in favor of arbitration, which requires the court to liberally read arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 n. 27 (1983); *see also ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) (the FAA "evinces a strong federal policy in favor of arbitration").

The presence of an arbitration clause in an agreement gives rise to a presumption of arbitrability. *ARW Exploration Corp.*, 45 F.3d at 1462 (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). However, "because 'arbitration is a matter of contract' and the authority of an arbitrator arises only from the parties' agreement to that forum in advance, 'a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit.'" *Sanchez v. Nitro–Lift Techs., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014) (quoting *AT & T Techs.*, 475 U.S. at 648–49).

"Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir.2005) (internal quotation and citation omitted). However, if the parties' agreement has an express provision that excludes a specific dispute, or there is the "most forceful evidence of a purpose to exclude the claim from arbitration," that dispute will be removed from consideration in arbitration. *AT & T Techs.*, 475 U.S. at 650.

The court must compel arbitration when there is a valid arbitration agreement and the dispute falls within the agreement's scope. *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1515–16 (10th Cir. 1995). Textron does not dispute that the agreements at issue contain valid arbitration agreements. Rather, Textron contends that this dispute does not fall within the scope of either agreement.

Assignment Agreement. First, SAC argues that these claims must be arbitrated as the arbitration clause in the assignment agreements is broad and includes the dispute at issue. Textron responds that the assignment agreements are separate agreements and the claims in this action do not arise out of the assignment agreements.

SAC contends that Textron's claims touch on the assignment agreements because the ProAdvantage agreements are the things assigned under the assignment agreements. The complaint, however, does not allege that the ProAdvantage agreements at issue have been assigned under the assignment agreements. As pointed out by Textron, the assignment agreements provide that assignment occurs under certain circumstances. Although one of those circumstances includes default under the ProAdvantage agreements, additional actions must occur for the assignment to be finalized. Specifically, there must be a written request for assignment after default. (Doc. 16, Exh. B at 3.) There is no evidence that this has occurred. Moreover, the assignment agreements specifically state that those agreements are separate and independent of the ProAdvantage agreements and that the assignment agreements do not amend the ProAdvantage agreements. (*Id.* at 1-2.) The assignment agreements further state that any "purported incorporation, attachment, reference, or any other act that has the effect of impairing or nullifying this separateness or independence is void." (*Id.* at 1.) Under the assignment agreements, SAC remains liable for amounts owed to Textron under the ProAdvantage agreements. (*Id.* at 4.)

SAC also argues that this dispute falls under the assignment agreements because they provide that the Cessna Service Parts & Programs ("CSPP") administers the ProAdvantage Agreements. (Doc. 16 at 8.) While the CSPP may administer the program, the allegations in the complaint do not indicate that this dispute arises out of that administration. Rather, the allegations are that SAC did not pay amounts owed under the ProAdvantage Agreements, SAC breached the open account terms by failing to pay, SAC breached the consignment agreement, and SAC converted consigned parts. There are no allegations concerning the assignment agreements in the complaint. Based on the language of the assignment agreements, the two types of agreements remain separate and the parties retain their rights under the respective agreements. The fact that the parties have entered into additional agreements does not mean that the arbitration provision in the assignment agreements controls. Rather, this dispute must arise out of the assignment agreements for that provision to apply to this action. This is not a case in which one agreement has an arbitration provision and the other agreement is silent. Rather, this is a situation in which each agreement has a separate arbitration clause and the parties specifically stated that they retained their rights under each agreement. SAC has not cited any authority for the proposition that the broader clause would apply in this matter.

Based on the allegations in the complaint and a review of the terms of the assignment agreement provided, the court finds that the dispute does not arise out of the assignment agreements.

ProAdvantage Agreement. SAC also argues that this dispute falls within the scope of the arbitration provision contained in the ProAdvantage agreements, which provides that all disputes arising out of or related to the ProAdvantage agreements will be arbitrated with exception of third party claims and "civil litigation for amounts owed by [the] Customer." (Doc. 16, Exh. A at 22.)

Textron argues that this is an action to recover amounts owed under the ProAdvantage agreements. Textron further argues that SAC has not asserted that the terms of the open account or the consignment agreement contain agreements to arbitrate. SAC contends that all counts in the complaint are arbitrable because Textron seeks a return of property in its request for relief. Textron claims that the request for the return of property may be split from this action and cites to *Chelsea Family Pharmacy, PLLC v. Medco Health Sols., Inc*., 567 F.3d 1191 (10th Cir. 2009).

In *Chelsea*, the circuit held that the court must determine "which claims in a complaint must be arbitrated." *Id.* at 1198. In that case, the circuit looked at the nature of the alleged injury. "If the allegations underlying the claims touch matters covered by the parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels attached to them." *Id.* However, the parties cannot be required to submit to arbitration a dispute which falls outside of their agreement to arbitrate. *Id.* at 1196. In this case, Textron has asserted four claims. The first claim is a breach of the eight ProAdvantage agreements. That claim seeks amounts owed under the agreements which, on its face, falls within the exception to the broad arbitration clause. SAC argues that the relief requested by Textron in its complaint, which is the return of "Consignment Parts," results in the claim being subject to arbitration. (Doc. 1 at 5.)

To resolve this question, a closer examination of the complaint is necessary. Textron's claim on count one alleges facts relating to the breach of the ProAdvantage Agreements. Upon termination of those agreements, SAC is allegedly required to pay "each program's negative account balance." (Doc. 1 at 2.) Those allegations do not allege a requirement that SAC return any Consignment Parts. Rather, count three, the breach of the consignment agreement, discusses the use of spare parts (the "Consignment Parts"). (*Id.* at 3.) Count three alleges that the parties entered into a consignment agreement that was supported by consideration. The consignment

7

agreement allegedly provided that upon termination SAC was to purchase the Consignment Parts or to return those parts to Textron. (*Id.* at 4.) Allegedly, SAC did not return parts to Textron. The relief requested in the general wherefore clause at the end of the complaint states that Textron seeks judgment for monetary damages and for the "return of any Consignment Parts still in SAC's possession." (*Id.* at 5.) SAC contends that Textron's claim of breach of the ProAdvantage agreements is subject to arbitration because of this specific relief requested. The court disagrees.

The Tenth Circuit instructed the court to review the facts in the complaint to determine which claims are subject to arbitration. *Chelsea*, 567 F.3d at 1197. With respect to the claim of breach of the ProAdvantage agreements, this claim clearly seeks the amounts allegedly owed under the agreements. Even though the parties have a broad arbitration provision, an express provision excluding a dispute from arbitration is "forceful evidence of a purpose to exclude the claim from arbitration." *AT & T Techs.*, 475 U.S. at 650. The request that the court order parts returned to Textron is clearly related to the alleged breach of the consignment agreement in count 3 as there are no facts alleging that SAC must return parts under the ProAdvantage agreements. Therefore, the court finds that count 1, breach of the ProAdvantage agreements, falls within the exception to the broad arbitration clause because, under that count, Textron is clearly seeking amounts owed under the ProAdvantage agreements as a result of SAC's alleged early termination, not return of consigned parts.

Textron has also asserted claims for breach of open account, breach of a consignment agreement, and conversion. Turning to count 2, the breach of the open account, the court does not find it necessary to determine whether that claim arises out of or is related to the ProAdvantage agreement. Even if this claim arises out of the agreement, the claim seeks amounts SAC allegedly

8

owes on the open account. As it is a claim to recover amounts owed, this claim would fall within the exclusion of the arbitration provision in the ProAdvantage agreements.

Turning to counts 3 and 4, breach of the consignment agreement and conversion, the complaint alleges that the parties entered into a consignment agreement regarding spare parts. As stated previously, the court has not been presented with this agreement. Allegedly, SAC breached the consignment agreement by removing spare parts from the consignment inventory and failing to maintain the parts in resellable condition. The conversion count alleges that SAC is liable for conversion by using the Consignment Parts without notifying Textron. SAC contends that these claims arise out of the ProAdvantage agreements because SAC was required to be enrolled in the other programs pursuant to the ProAdvantage agreements. (Doc. 16 at 9.)

SAC cites to the following provision in support of its position:

> Required Accounts with Cessna. For the duration of this [ProAdvantage] Agreement, Customer will maintain with Cessna all accounts required for Customer to be enrolled in ProAdvantage Programs and will keep such accounts in good standing.

(Doc. 16, Exh. A at 7.1.)

SAC argues that counts 3 and 4 fall within the ProAdvantage agreements because it was required to maintain the consignment agreement under section 7.1. But that provision merely states that SAC will maintain *accounts* required to be enrolled in the ProAdvantage Programs. SAC fails to identify the provision that would specify that entering into a consignment agreement is a requirement of the ProAdvantage agreements. Moreover, SAC has failed to provide the court with a copy of the consignment agreement to determine if it is related to the ProAdvantage agreements. *See Consol. Brokers Ins. Servs., Inc. v. Pan-Am. Assur. Co.*, 427 F. Supp. 2d 1074, 1082 (D. Kan. 2006) (discussing factors to consider when a related agreement does not have an arbitration clause). Based on the allegations in the complaint and the terms of the ProAdvantage

9

agreements, the court cannot conclude at this time that counts 3 and 4 arise out or relate to the ProAdvantage agreements.

**Conclusion**

Therefore, SAC's motion to dismiss and compel arbitration is DENIED.  (Doc. 15.)

**IT IS SO ORDERED** this 30th day of April, 2019

                                      ___s/ John W. Broomes_____
                                      JOHN W. BROOMES
                                      UNITED STATES DISTRICT JUDGE