IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TEXTRON AVIATION, INC.,

    Plaintiff,

v.                                                  Case No. 18-1187-JWB

SUPERIOR AIR CHARTER, LLC,

    Defendant

SUPERIOR AIR CHARTER, LLC,

    Counter Claimant,

v.

TEXTRON AVIATION, INC., et al.,

    Counter Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Counterclaim Defendants' Motions to Dismiss (Docs. 51, 66.) The motions have been fully briefed and are ripe for decision. (Docs. 52, 64, 67, 69, 77, 82.) For the reasons stated herein, Counterclaim Defendants' motions are GRANTED.

**I.    Background**

On June 26, 2018, Plaintiff Textron Aviation, Inc., ("Textron") filed this action against Superior Air Charter, LLC ("SAC"). Plaintiff alleges that it is a successor in interest to Cessna Aircraft Company ("Cessna") after a merger. Cessna and SAC entered into eight ProAdvantage agreements concerning eight different aircraft during 2012 to 2014. The ProAdvantage agreements provided price protection for maintenance costs and the ability to purchase parts

directly. Pursuant to the terms, upon early termination, SAC must essentially pay any negative balance. The ProAdvantage agreements were allegedly terminated early. Textron also asserts that SAC breached a consignment agreement concerning aircraft parts and failed to pay on an open account. Textron seeks monetary damages, return of the consignment parts, attorney fees and interest. SAC previously moved to dismiss and compel arbitration. (Doc. 15.) This court denied SAC's motion. (Doc. 21.)

On June 24, 2019, SAC filed an answer and asserted counterclaims against Textron, Cessna[1], Cessna Finance Corporation ("CFC"), and Donald Beverlin (collectively referred to as "Counterclaim Defendants"). (Doc. 30.) In essence, SAC contends that Counterclaim Defendants fraudulently induced SAC and related entities into entering the agreements concerning the sale of the aircraft. Textron and CFC are Kansas corporations. Beverlin is a California resident. SAC is a limited liability company organized in Delaware.

SAC alleges that JetSuite, Inc., is a private jet charter airline that provides transportation services throughout the United States. JetSuite, Inc., formed JS CJ3, LLC to own the aircraft purchased from Textron and it formed SAC to operate the aircraft. (Doc. 30 at 9.) SAC referred to itself and these entities as "JetSuite" throughout the allegations in the counterclaims.[2] (Doc. 30 at 5.) According to the allegations, Beverlin was an agent of Textron and coordinated the purchase and financing of the eight CJ3 aircraft. Discussions to purchase the aircraft began in 2012. Beverlin, Textron, and CFC allegedly made representations regarding the aircraft's exceptional performance. Allegedly, Beverlin made these representations during his visits to California. (Doc.

---

[1] Although SAC has asserted counterclaims against Cessna, Textron asserts that Cessna merged into Textron. Therefore, the court will refer to Cessna and Textron as Textron throughout this order.
[2] CFC previously brought an action against JS CJ3 and JetSuite, Inc., for non-payment of the promissory notes. *Cessna Finance Corporation v. JS CJ3, LLC and JetSuite, Inc.*, Case No. 18-CV-1095-EFM. JetSuite filed counterclaims against CFC in that action. Those counterclaims are essentially asserted by SAC in this case although SAC is not mentioned in the JetSuite case. The parties, however, have not moved to consolidate the actions.

30 at 12.) However, there were widespread problems that involved lavatory chemicals leaking from the toilet onto the aircraft's fuselage and other parts of the aircraft. This resulted in corrosion on the fuselage. This problem was due to an alleged flaw in the aircraft's design. SAC alleges that the corrosion problems in the CJ3 were known by Beverlin, Textron, and CFC. (Doc. 30 at 14.) Beverlin, Textron, and CFC failed to inform JetSuite about the corrosion problems.

In September 2012, JetSuite entered into a Letter Agreement for the purchase of fifteen CJ3 aircraft. For each aircraft, JS CJ3 was required to execute a promissory note, security agreement, and a cross-default agreement. (Doc. 30 at 16.) JetSuite was to execute a guaranty.[3] (*Id.*) Moreover, Textron required SAC to enter into the ProAdvantage agreements. SAC alleges that it was induced into entering the ProAdvantage agreements and that none of the agreements would have been entered into had the JetSuite entities known of the corrosion problems. SAC further alleges that JetSuite was also induced into entering the related agreements regarding the purchases of the aircraft.

On March 23, 2017, JetSuite discovered corrosion on one of the aircraft. As a result, that aircraft needed extensive repairs. (Doc. 30 at 22-24.) The estimated cost of repair was $1,215,000 and the aircraft would not be ready to return to service for 395 days. The lavatory-related corrosion problems have resulted in four additional aircraft being out of service. The second aircraft was out of service around April 23, 2017. The third aircraft was out of service around December 1, 2017, and the fourth was out of service around December 15, 2017. (*Id.* at 24.) The remaining four aircraft have also required significant repairs. (*Id.* at 25.)

SAC filed its answer and counterclaims against Counterclaim Defendants on June 24, 2019. SAC asserts the following counterclaims against Counterclaim Defendants: fraudulent

---

[3] Presumably, SAC means JetSuite, Inc. However, the allegations do not make this clear.

inducement; fraudulent concealment; civil conspiracy; and fraudulent business acts under Cal. Bus. & Prof. Code § 17200, California's Unfair Competition Law ("UCL"). Counterclaim Defendants move for dismissal on various grounds.

## II. Motion to Dismiss Standards

In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to SAC. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). Rule 12(b)(6) requires SAC to allege "enough factual allegations in the complaint to set forth a plausible claim." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1171–72 (10th Cir. 2015) (internal citations omitted). In the end, the issue is not whether SAC will ultimately prevail, but whether SAC is entitled to offer evidence to support its claims. *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

## III. Analysis

### A. Choice of Law

"A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits, including that state's choice-of-law rules." *Hayden Outdoors, Inc. v. Niebur*, 994 F. Supp. 2d 1206, 1208 (D. Kan. 2014) (quoting *Vazirani & Assoc's Fin., LLC v. Heitz*, No. 11–1032–MLB, 2011 WL 2295027, at *2 (D. Kan. June 8, 2011) (internal citation omitted)). In this case, the ProAdvantage agreements have a choice of law provision. "Federal courts in Kansas

routinely enforce the parties' contractual choice-of-law provisions under Kansas choice-of-law rules." *Altrutech, Inc. v. Hooper Holmes, Inc.*, 6 F. Supp.2d 1269, 1273 (D. Kan. 1998); *see Brenner v. Oppenheimer & Co.*, 273 Kan. 525, 539, 44 P.3d 364, 375 (2002) ("Where the parties to a contract have entered an agreement that incorporates a choice of law provision, Kansas courts generally effectuate the law chosen by the parties to control the agreement.") The choice of law provision in the agreements is as follows:

> 11.6 Governing Law. The laws of the State of Kansas, U.S.A., (without giving effect to its conflicts of law principles) govern all matters arising from or relating to this Agreement and all of the transactions contemplated herein, including, without limitation, validity, interpretation, construction, performance, and enforcement of this Agreement. The Parties expressly agree to exclude from this Agreement the 1980 United Nations Convention on Contracts for the International Sale of Goods, as amended and any successor thereto. This Agreement is not interpreted or construed for or against any Party on the basis of which Party drafted this Agreement.

(Doc. 52, Exhs. 1-8, § 11.6.)[4]

The court finds that the choice of law provision is broad and includes all matters relating to the agreements entered into by SAC and Textron. SAC does not argue that its claims fall outside the scope of the choice of law provision. Rather, SAC argues that the provision is not applicable because SAC has alleged fraudulent inducement with respect to entering into the agreements. The Tenth Circuit has held that a "plaintiff seeking to avoid a choice provision on a fraud theory must, within the confines of Fed. R. Civ. P. 9(b) and 11, plead fraud going to the specific provision." *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 960 (10th Cir. 1992) (citing to *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n. 14 (1974) and *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)); *see also Hammond v. Alfaro Oil & Gas, LLC*, No. CIV.A. 10-1326-MLB,

---

[4] A court may consider a document that is central to a parties' claim if the document is not in dispute. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). The ProAdvantage agreements are central to the claims in this matter and SAC has not disputed the authenticity of the agreements attached to the motion to dismiss. Therefore, the court may consider the agreements without converting this motion to a motion for summary judgment. *Id.*

2011 WL 976711, at *2 (D. Kan. Mar. 17, 2011). SAC does not argue that the counterclaims allege fraud going to the choice of law provision. Rather, SAC argues that *Riley* did not involve a choice of law provision and any discussion regarding choice of law was dicta and, moreover, that *Aces Transp., Inc. v. Ryan Transp. Servs., Inc.*, No. 05-2434 JWL, 2006 WL 1487008, at *5 (D. Kan. May 24, 2006), applies. (Doc. 64 at 3-4.)

The contracts at issue in *Riley* did in fact involve a choice of law provision. The following issues were raised in *Riley* at the district court level: "(1) whether choice of forum and **law** provisions in Riley's contract with Lloyd's were valid and enforceable, and (2) whether arbitration and **choice of law** provisions in Riley's contract with the Underwriters, requiring arbitration in England and application of English law, were valid and enforceable." *Riley*, 969 F.2d at 954-55 (emphasis supplied). The district court held that the provisions were enforceable and dismissed the claims. SAC argues that the sole issue in *Riley* was the "applicability and effect of the forum selection clause and the arbitration clause" and, therefore, any discussion of the choice of law provision was dicta. (Doc. 64 at 4.) On the contrary, the choice provisions at issue in *Riley* actually included language regarding both the forum and the law. *Riley*, 969 F.2d at 955, n. 1,2. Moreover, Riley argued before the court of appeals that "enforcement of the **choice of forum and law** provisions is unreasonable because he effectively will be deprived of his day in court." *Id.* at 958 (emphasis supplied). Therefore, the Tenth Circuit's discussion regarding the choice of law provision was not dicta. With respect to *Aces Transp.*, that case applied California choice of law rules because it had been transferred to this district from California. 2006 WL 1487008, at *4. Therefore, the analysis in that case is not applicable. SAC provides no other authority from the Tenth Circuit or Kansas that would indicate that the holding in *Riley* is not applicable to this case. SAC's discussion of out of district cases are not persuasive to this court in light of *Riley*.

Reviewing the allegations in the counterclaims asserted by SAC, SAC has generally alleged fraud with respect to the agreements. SAC has not specifically alleged fraud in connection with the choice of law provision. Therefore, the court will apply Kansas law to SAC's claims against Textron pursuant to the choice of law provision in the agreements.

Turning to Beverlin, although not a party to the agreements, Beverlin argues that the choice of law provision in the agreements should be applicable to the claims against him because SAC has alleged that Beverlin was an agent, servant, representative, alter ego, and employee of the Counterclaim Defendants. *See* Doc. 69 at 4 (citing Doc. 30 at ¶ 18.) Beverlin, however, fails to cite any authority for the proposition that a choice of law provision must be enforced with respect to claims made against a non-signatory. Even if Beverlin's argument is supported under Kansas law, SAC's claim is nevertheless barred by the statute of limitations as determined herein.[5]

The court will now review the allegations to determine the applicable law for SAC's claims against Beverlin and CFC. Under Kansas law, the substantive law of the state where the tort occurred applies. *Kansas Mun. Gas Agency v. Vesta Energy Co.*, 840 F. Supp. 814, 822–23 (D. Kan. 1993) (citing *Ling v. Jan's Liquors*, 237 Kan. 629, 703 P.2d 731 (1985)). "Under Kansas choice-of-law principles, the Court must consider the law of the place of the wrong except where the injury and the negligent conduct occur in different states, in which case the place of injury controls." *Draughon v. United States*, 103 F. Supp. 3d 1266, 1282 (D. Kan. 2015). In response to Textron's motion, SAC contends that California is where the injury occurred because that is where SAC has its principal place of business. (Doc. 64 at 7.) The paragraphs cited to by SAC refer to fraudulent allegations made to "JetSuite" and do not make factual allegations regarding SAC's principal place of business. (*See* Doc. 30, ¶¶ 52, 97, 143.) ("CFC and CAC jointly sent

---

[5] CFC did not assert that the choice of law provision in the ProAdvantage agreements applied to the claims against it. (Doc. 67 at 11.)

7

their agent, Beverlin, into California on multiple occasions to induce JetSuite into entering into both the purchase and finance transactions.") ("Beverlin would make multiple trips to California and otherwise meet or communicate with JetSuite concerning the JetSuite Aircraft in order to persuade them to purchase the JetSuite Aircraft from CAC and finance the aircraft from CFC…")

Even though SAC has not alleged where the injury occurred, the allegations do allege that tortious conduct occurred in California. The allegations state that misrepresentations were made to "JetSuite" in California.[6] Therefore, construing the allegations in a light most favorable to SAC, as the court must do, it appears that the tort occurred in California. As there is no allegation regarding where the injury was felt, the court will apply California law to SAC's claims against Beverlin and CFC because that is where the fraud allegedly occurred. *See Kansas Mun. Gas Agency*, 840 F. Supp. at 822–23.

**B. Statute of Limitations**

Counterclaim Defendants move for dismissal of the fraud claims on the basis of statute of limitations. Even though the court will apply California substantive law to SAC's claims against CFC and Beverlin, Kansas applies its own statute of limitations to the claims. *Garcia v. Int'l Elevator Co.*, 358 F.3d 777, 779 (10th Cir. 2004). There are two exceptions. *Id.* If the cause is based on a foreign statute, such as the California UCL statute, the statutory time limit is considered substantive and will be controlling. *Id.* Also, under the borrowing statute, K.S.A. § 60-516, the foreign jurisdiction's statute of limitations will apply if it would result in the action being out of time. *Id.* Under the unfair competition chapter, a UCL claim may be brought within four years. Cal. Bus. & Prof. Code § 17208. Because this statute has its own time restriction, it is substantive and is applicable to SAC's claim under the UCL. *See Garcia*, 358 F.3d at 779. The remaining

---

[6] SAC's allegations state that the reference to "JetSuite" includes JetSuite, JS CJ3, and SAC. (Doc. 30 at 5.)

claims, however, are subject to Kansas's statute of limitations. Under Kansas law, fraud claims must be brought within two years. K.S.A. § 60-513. A civil conspiracy claim is subject to the statute of limitations for the underlying tort. *See Jarvis v. Nationwide Ins. Co. of Am.*, 2019 WL 4725239, *7 (Kan. Ct. App. Sept. 27, 2019). Therefore, when the "underlying wrong is time barred, the civil conspiracy claim is time barred as well." *Id.*

Counterclaim Defendants assert that SAC's fraud claims are barred because it has been more than two years since SAC discovered the damage to an aircraft related to the lavatory corrosion, which was allegedly discovered on March 23, 2017. The counterclaims were asserted on June 24, 2019. SAC contends that Kansas law provides that the statute does not run until the fraud is discovered and it was not discovered on March 23, 2017, because the discovery of the damage "was not enough to inform SAC that it had been the victim of fraud by the Counterclaim Defendants." (Doc. 64 at 7-8.) SAC, however, fails to point to any allegation in the counterclaims that set forth a different date. When it appears that a claim is time barred and a motion to dismiss is filed, SAC has the burden to come forward and allege facts to support its position that the claim is not time barred. *Hemphill v. Shore*, 295 Kan. 1110, 1123, 289 P.3d 1173, 1183 (2012). SAC has not done so. Rather, SAC's allegations set forth the date of the first injury as March 23, 2017.

Under K.S.A. 60–513(a)(3), "the cause of action shall not be deemed to have accrued until the fraud is discovered." *Bonura v. Sifers*, 39 Kan. App. 2d 617, 630, 181 P.3d 1277, 1286 (2008). "Discovered" means that the action accrues when SAC "possesses actual or constructive notice of the fraud or when, with reasonable diligence, the fraud could have been discovered." *Id.* (citing *Miller v. Foulston, Siefkin, Powers & Eberhardt*, 246 Kan. 450, 465, 790 P.2d 404 (1990)). Counterclaim Defendants argue that SAC was on notice on March 23, 2017, of the injury and that a reasonable person would have investigated. Reviewing the allegations, not only does SAC allege

9

injury on March 23, 2017, but SAC alleges that another aircraft suffered the same extensive damages on April 23, 2017. (Doc. 30 at 24.) As of April 23, two out of the eight aircraft were out of service due to the same corrosion. Based on these facts, SAC should have acted with reasonable diligence to discover the alleged fraud by at least April 23, 2017. Moreover, SAC wholly fails to make any specific allegations regarding the date it discovered the fraud. Upon a review of the allegations, SAC's fraud claims are barred by the statute of limitations because SAC could have discovered the fraud at the latest of April 23, 2017, and the counterclaim action was not filed until June 24, 2019. Therefore, the fraud claims are dismissed.[7]

Counterclaim Defendants also move for dismissal of the civil conspiracy claim on the basis that the underlying fraud claims have been dismissed.[8] Under Kansas law, the civil conspiracy claim is time barred if the underlying tort claim is time barred. *Jarvis*, 2019 WL 4725239, *7. Therefore, the civil conspiracy claim is also dismissed as to all Counterclaim Defendants.

**C. UCL**

Counterclaim Defendants move for dismissal of the UCL claim on various grounds.

<u>SAC's claim against Textron</u>. Textron asserts that the claim is barred because of the contractual choice of law provision, citing *Continental Airlines, Inc. v. Mundo Travel Corp.*, 412 F. Supp.2d 1059, 1070 (E.D. Cal. 20016). In that matter, the court held that a "valid choice-of-law provision selecting another state's law is grounds to dismiss a claim under California's UCL." *Id.* (citing *Medimatch, Inc. v. Lucent Techs., Inc.*, 120 F. Supp.2d 842, 862 (N.D. Cal. 2000) (agreement that "construction, interpretation and performance of this Agreement shall be governed

---

[7] Textron does not dispute that SAC may allege fraud as a defense to its claims. (Doc. 69 at 2.) That is a correct statement of Kansas law. *See Pawnee Petroleum Prod., LLC v. Crawford*, No. 01-1314-WEB, 2003 WL 21659665, at *5 (D. Kan. Apr. 18, 2003) (citing *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 514 (10th Cir. 1994) ("[T]he statute of limitations ... do[es] not bar the affirmative defense of fraud.")

[8] The allegations state that Counterclaim Defendants conspired to fraudulently induce SAC to enter into the agreements. (Doc. 30 at 32.) Therefore, the underlying tort is the fraud claim and not the UCL claim. In any event, the conspiracy claim would fail because the court has determined that SAC cannot state a claim under the UCL.

by the local laws of the State of New Jersey" required dismissal of California UCL claims). SAC attempts to distinguish *Continental Airlines* by asserting that the allegations in that case surrounded conduct during the performance of an agreement. The holding in *Continental Airlines*, however, is not so limited. Rather, the court stated that the claim is subject to dismissal when there is a binding choice of law provision governing the parties' conduct. In this case, any claims arising or relating to the agreements are subject to Kansas law. Therefore, SAC cannot bring a claim against Textron under California law. *Id.*

Beverlin and CFC. Both Beverlin and CFC argue that SAC cannot maintain an action under this statute because the UCL statute is inapplicable to commercial parties when the matter arises from a contractual business relationship. In *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007), the California Court of Appeals held that when a "UCL action is based on contracts not involving either the public in general or individual consumers who are parties to the contract, a corporate plaintiff may not rely on the UCL for the relief it seeks." Beverlin and CFC argue that this holding precludes SAC from maintaining an action under the UCL. They argue that the fraud and business acts complained of are all related to the contracts and the business relationship between the parties as a result of the contracts and that none of the contracts involve the public or individual consumers.

Reviewing the UCL counterclaim, SAC generally alleges that all Counterclaim Defendants "engaged in and have committed unlawful, unfair, and fraudulent business acts or practices as complained of above." (Doc. 30 at 31.) The factual allegations set forth by SAC focus on alleged false statements and omissions regarding the aircraft purchased by JetSuite. There are no allegations that Beverlin and CFC made any false statements to the general public. Moreover, there are no allegations that SAC and Counterclaim Defendants are competitors. The UCL "was

11

enacted to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Linear Tech. Corp*., 152 Cal. App. 4th at 135. *Linear Tech* has been interpreted as foreclosing any claims by a corporation when the contracts do not involve the general public or individual consumers. *See Sacramento E.D.M., Inc. v. Hynes Aviation Indus., Inc*., 965 F. Supp.2d 1141, 1154 (E.D. Cal. 2013) ("The central issue presented under the UCL is whether the public at large, or consumers generally, are affected by the alleged business practice of defendants. Thus, a UCL claim fails if it lacks any connection to the protection of fair competition or the general public.") (internal citations and quotations omitted); *MH Pillars Ltd. v. Realini*, No. 15-1383, 2017 WL 916414, at *10 (N.D. Cal. Mar. 8, 2017) ("The UCL was not enacted to protect commercial parties who have a dispute that revolves around a contractual business relationship.")

The allegations in the UCL counterclaim lack any connection to fair competition or the general public. Rather, they center on alleged false statements and omissions in the context of the purchase of the aircraft and the execution of the related agreements. SAC argues that the holding in *Linear Tech* is "more nuanced than Counterclaim Defendants let on." (Doc. 64 at 13.) SAC cites *Circle Media, LLC v. Regus Mgmt. Group, LLC*, No. 3:12-CV-0400-SC, 2015 WL6638929, *5 (N.D. Cal. Oct. 30, 2015), in support of its position. In *Circle Media*, however, the court held that the allegations in the complaint encompassed "actions beyond the parties' contractual relationship, including publishing deceptive advertisements, printing documents in illegible fonts, hiding fees in ancillary documents, and other unfair, deceptive, or unlawful business practices." *Id.* There are no such allegations here.

SAC also cites to *Copart, Inc. v. Sparta Consulting, Inc*., 339 F. Supp.3d 959, 987 (E.D. Cal. 2018), in support of the proposition that a "plaintiff may satisfy the UCL's fraudulent prong

by showing 'deception to some members of the public, or harm to the public interest,' or that members of the public are 'likely to be deceived.'" (Doc. 64 at 13.) SAC, however, has not identified any allegations that support an inference that members of the public have been deceived or were likely to be deceived by Beverlin or CFC's conduct. The only allegation that SAC points to is an allegation that Counterclaim Defendants kept their knowledge of the defect secret from "owner/operators, prospective purchasers, and the aviation community in general." (Doc. 64 at 14.) SAC, however, does not allege that the public or the aviation community was deceived as a result of Counterclaim Defendants' conduct. Under the UCL, in order to be deceived or likely to be deceived, "members of the public must have had an expectation or an assumption about the matter in question." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838, 51 Cal. Rptr. 3d 118, 129 (2006), *as modified* (Nov. 8, 2006). There are no allegations regarding the aviation community's expectations or assumptions about the aircraft.

This case does not involve individual consumers or the general public. Nor are there any allegations regarding unfair competition practices that would concern the general public. Rather, it revolves around contracts to purchase several aircraft executed by several related parties. Therefore, SAC cannot maintain a claim under the UCL. *Linear Tech. Corp.*, 152 Cal. App. 4th at 13; *123 Los Robles LLC v. Metzler*, No. 2:17-CV-00392-RGK-SK, 2017 WL 10311210, at *3–4 (C.D. Cal. Aug. 14, 2017) (dismissal of the UCL claim because it did not involve competitors or individual consumers); *In re ConocoPhillips Co. Serv. Station Rent Contract Litig.*, No. M:09-CV-02040 RMW, 2011 WL 1399783, at *3 (N.D. Cal. Apr. 13, 2011) (relationship is contractual and the dispute concerns the economic relationship).

SAC's claim against Counterclaim Defendants under the UCL is dismissed.

## IV. Conclusion

Therefore, Counterclaim Defendants' motions to dismiss (Docs. 51, 66) are GRANTED.

**IT IS SO ORDERED** this 21st day of November, 2019

                                      ___s/ John W. Broomes_____
                                      JOHN W. BROOMES
                                      UNITED STATES DISTRICT JUDGE